# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued March 3, 2017        Decided June 23, 2017

No. 16-1415

MILLENNIUM PIPELINE COMPANY, L.L.C.,
PETITIONER

v.

BASIL SEGGOS AND NEW YORK STATE DEPARTMENT OF
ENVIRONMENTAL CONSERVATION,
RESPONDENTS

CPV VALLEY, LLC,
INTERVENOR

---

On Petition for Review from the
New York State Department of Environmental Conservation

---

*Catherine E. Stetson* argued the cause for petitioner. With her on the briefs was *Sean Marotta*.

*Elizabeth W. Whittle* was on the brief for intervenor CPV Valley, LLC in support of petitioner.

*Brian M. Lusignan*, Assistant Attorney General, Office of the Attorney General for the State of New York, argued the cause for respondents. With him on the brief were *Eric T. Schneidermann*, Attorney General, *Barbara D. Underwood*,

2

Solicitor General, *Frederick A. Brodie*, Assistant Solicitor General, and *Lisa M. Burianek*, Deputy Bureau Chief.

Before: TATEL, SRINIVASAN, and WILKINS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* SRINIVASAN.

SRINIVASAN, *Circuit Judge*: Millennium Pipeline Company, L.L.C., would like to extend its existing natural gas pipeline in Orange County, New York. Before it can break ground, however, it must gain the approval of the Federal Energy Regulatory Commission (FERC). Millennium must also comply with environmental regulations like the Clean Water Act, which requires it to show that its pipeline will meet all applicable water-quality requirements. 33 U.S.C. § 1341(a)(1).

As part of that permitting process, Millennium submitted an application for a water-quality certificate to the New York State Department of Environmental Conservation. More than a year has passed, but the Department has taken no formal action on Millennium's application. Millennium now asks us to compel the Department to act on the application.

We dismiss Millennium's petition for review. Even if the Department has unlawfully delayed acting on Millennium's application, its inaction would operate as a waiver, enabling Millennium to bypass the Department and proceed to obtain approval from FERC. The Department's delay, then, causes Millennium no cognizable injury. Millennium therefore lacks standing to proceed with its petition.

3

I.

A.

For any company desiring to construct a natural gas pipeline, all roads lead to FERC. The Natural Gas Act of 1938 vests the agency with "exclusive jurisdiction" over the interstate transportation of natural gas. *Schneidewind v. ANR Pipeline Co*., 485 U.S. 293, 300-01 (1988). No company or person may construct a natural gas pipeline without first obtaining "a certificate of public convenience and necessity" from the agency. 15 U.S.C. § 717f(c).

Before FERC can issue a certificate of public convenience, the agency must ensure that the proposed pipeline complies with all applicable federal, state, and local regulations. *See* 15 U.S.C. § 717b(d); 18 C.F.R. § 4.38. The Clean Water Act, the statute at issue in this case, is one such regulatory regime. *See* 33 U.S.C. § 1341(a)(1); 15 U.S.C. § 717b(d)(3). Because Millennium's proposed pipeline would traverse several streams in southern New York, the Clean Water Act requires the State to certify that any discharge from the pipeline will comply with the Act's water-quality requirements. 33 U.S.C. § 1341(a)(1). FERC cannot sign off on the construction until New York either grants a water-quality certificate or waives the Act's requirements. *See id.*

To prevent state agencies from indefinitely delaying issuance of a federal permit, Congress gave States only one year to act on a "request for certification" under the Clean Water Act. *Alcoa Power Generating Inc. v. FERC*, 643 F.3d 963, 972 (D.C. Cir. 2011) (quoting 33 U.S.C. § 1341(a)(1)). That deadline is established by section 401 of the Act, which requires a State to grant or deny the certificate "within a reasonable period of time (which shall not exceed one year)

4

after receipt of [a] request." *Id.* If the State fails to act within that period, the Act's "certification requirements" are deemed "waived," such that the pipeline no longer needs a water-quality certificate to begin construction. *Id.*

B.

On November 9, 2016, FERC issued a provisional certificate of public convenience for Millennium's proposed project, a 7.8-mile extension of its existing natural gas pipeline. The Commission, however, conditioned its approval on proof of Millennium's receipt of "all authorizations required under federal law," including the Clean Water Act. *Millennium Pipeline Co.*, 157 FERC ¶ 61,096, 2016 WL 6662548, at *35 (2016). To that end, Millennium must present FERC with documentation of the applicable permits or evidence of waiver thereof. *Id.*

Millennium had previously applied for a water-quality certificate from the New York State Department of Environmental Conservation. The Department received Millennium's request on November 23, 2015, and responded by sending Millennium a notice of incomplete application. Over the next year, the Department sent Millennium several requests for supplemental information. Millennium has complied with the Department's requests each time. In November 2016, the Department wrote a letter indicating that Millennium had "fully responded" to its requests, but it would "continue its review of the Application, as supplemented, to determine if a valid request for a [water-quality certificate] has been submitted." N.Y. State Dep't of Envtl. Conservation, Letter on Application for Section 401 Water Quality Certification, Freshwater Wetlands and Protection of Waters Permit (Nov. 18, 2016). The Department stated that it had "at

5

a minimum, until August 30, 2017 to either approve or deny the Application." *Id.*

Frustrated by the agency's delay, Millennium brought a petition for review in this Court under section 19(d)(2) of the Natural Gas Act. That provision gives us "original and exclusive jurisdiction" to review "an alleged failure to act by a . . . State administrative agency acting pursuant to Federal law to issue, condition, or deny any permit required under Federal law." 15 U.S.C. § 717r(d)(2). If we find that an agency has delayed unlawfully, the Act requires us to remand the proceeding to the agency and "set a reasonable schedule and deadline for the agency to act on remand." *Id.* § 717r(d)(3).

Millennium argues that the Department failed to act within the Clean Water Act's one-year statutory window, and therefore asks us to compel the Department either to grant its application or to take action within a specified schedule. The Department counters that it need only act within one year of receiving a *complete* or *valid* application, and it alleges Millennium has repeatedly failed to meet that requirement.

II.

Before reaching the merits of Millennium's claim, we first examine Millennium's standing to sue. Article III of the Constitution limits our jurisdiction to "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. To satisfy the case-and-controversy requirement, a petitioner must allege (i) that it suffered an injury in fact; (ii) that a causal connection exists between the injury and challenged conduct; and (iii) that it is likely, as opposed to speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).

6

Millennium fails at the first prong. It asks us to hold that the Department violated the Clean Water Act's statutory deadline. Even if that were so, Millennium would suffer no cognizable injury from the violation. We therefore dismiss Millennium's petition for want of standing.

A.

All agree that the Clean Water Act gave the Department a "reasonable period of time (which shall not exceed one year)" to act on Millennium's application. 33 U.S.C. § 1341(a)(1). Millennium thus does not purport to have suffered any injury from the Department's inaction within that period. Millennium instead challenges the Department's continued, allegedly unlawful delay, which it claims will prevent it from constructing its pipeline.

Even if the Department has unlawfully delayed, however, it can no longer prevent the construction of Millennium's pipeline. Millennium ultimately needs one permit to begin construction on its pipeline: the certificate of public convenience from FERC. Typically, the Clean Water Act poses a hurdle to obtaining that certificate. The Act forbids any federal agency from granting a license or permit until the "certification required by [the Act] has been obtained *or has been waived*." 33 U.S.C. § 1341(a)(1) (emphasis added). That provision also makes clear that waiver occurs after one year of agency inaction. *Id.*

Once the Clean Water Act's requirements have been waived, the Act falls out of the equation. *Id.* As a result, if the Department has delayed for more than a year—as Millennium alleges—the delay cannot injure Millennium. Instead, the delay triggers the Act's waiver provision, and Millennium then

7

can present evidence of waiver directly to FERC to obtain the agency's go-ahead to begin construction.

We have previously dismissed a petition for review for lack of standing when faced with highly similar allegations of state inaction. *See Weaver's Cove Energy, LLC v. R.I. Dep't of Envtl. Mgmt.*, 524 F.3d 1330, 1332 (D.C. Cir. 2008). That case, like this one, involved a petition for review under section 19(d)(2) of the Natural Gas Act. The petitioner, a natural gas company, claimed that two state agencies had failed to process its applications within the Clean Water Act's one-year deadline. *Id.* Although the state agencies had acted by the time the petitioner sought judicial review (one had provisionally denied the certificate, while another had granted it), the petitioner asked for a declaration that the agencies had waived any right to deny its applications. *Id.*

The petitioner in *Weaver's Cove*, as here, asserted its standing was "self-evident" because it was the object of delayed agency action. *See id.* at 1333. But we held that "[e]ven a final adverse decision would not support" the petitioner's standing. *Id.* Instead, the petitioner's theory ultimately was that "it benefited from the agencies' inaction": by delaying, the agencies had forfeited their opportunity to deny the water-quality certificate. *Id.* If the petitioner was correct, we explained, the agencies could not block the pipeline's construction even if they went on to deny the permit outright, because any decision "would be too late in coming and therefore null and void." *Id.*

The same is true here. If the Clean Water Act's requirements are waived, there is nothing left for the Department—and therefore for this Court—to do. Under the Natural Gas Act, if a reviewing court finds that an agency has unlawfully delayed, the court "shall remand the proceeding to

8

the agency to take appropriate action consistent with the order of the Court" and "shall set a reasonable schedule and deadline for the agency to act on remand." 15 U.S.C. § 717r(d)(3). Millennium contends that we should require the Department to grant its application, or, at minimum, should set a deadline for the Department's decision. But to what effect? If we were to determine the Department exceeded the Clean Water Act's deadline, we necessarily would conclude the Clean Water Act's requirements have been waived. At that point, the Department's decision to grant or deny would have no legal significance.

So what can Millennium do in the face of the Department's continued inaction? Millennium can go directly to FERC and present evidence of the Department's waiver. To be sure, FERC could ultimately decline to find waiver. But in that event, FERC—not the Department—would be blocking the construction. *See Weaver's Cove*, 524 F.3d at 1333. Millennium could immediately appeal any adverse FERC decision on the waiver question to this Court under section 19(b) of the Natural Gas Act, which affords judicial review to parties aggrieved by FERC's orders. *See Alcoa*, 643 F.3d at 968; 15 U.S.C. § 717r(b). And insofar as Millennium has concerns that FERC might itself delay action, the present petition under section 19(d)(2) could not support our review in any event: that provision targets *state* agencies, and thus can provide no basis to force FERC's hand.

Millennium suggests that the Department might stand as an independent barrier to construction even if FERC issues a final certificate of public convenience. Millennium cites a letter in which the Department "reminds" the company that, "regardless of any action by FERC, . . . no construction activities may commence" unless the Department issues a water-quality certificate. *See* N.Y. State Dep't of Envtl.

9

Conservation, Letter on Application for Section 401 Water Quality Certification, Freshwater Wetlands and Protection of Waters Permit (Nov. 18, 2016). That letter, however, does not purport to say that the Department would retain independent authority to stop construction even if FERC were to issue a certificate of public convenience. As the Department acknowledged at oral argument, if FERC issues a certificate of public convenience, Millennium would have all the authority it needs to begin construction. *See* Oral Arg. Tr. 19:10-18; *see also* 15 U.S.C. § 717b(e). And if the Department were to disagree with FERC's decision, the Department's recourse would be to seek review in this Court pursuant to section 19(b). *See* 15 U.S.C. § 717r(b). Otherwise, the Department could no longer block Millennium's construction.

B.

In 2005, Congress amended section 19(d) of the Natural Gas Act to allow this Court to compel action from foot-dragging agencies. *See* Energy Policy Act of 2005, Pub. L. 109-58, 119 Stat. 594, 690 (2005). Millennium, joined by intervenor CPV Valley, argues that our interpretation would render Congress's amendments toothless. We disagree. As amended, section 19(d)'s judicial review provisions have full force when, unlike with the Clean Water Act, there is no built-in remedy for state inaction already in place.

The Clean Water Act's certification requirements, as explained, automatically expire after one year of agency delay. 33 U.S.C. § 1341(a)(1). Not all federal and state regulations include that type of waiver provision, however. In those circumstances, Congress recognized that state agencies could effectively block the construction of natural gas pipelines by indefinitely delaying action on permit applications. Congress amended the Natural Gas Act to ensure that "sheer inactivity

10

by the State" could not frustrate "the Federal application" process. *See* H.R. Rep. 91-940, at 55 (1970) (Conf. Rep.), *as reprinted in* 1970 U.S.C.C.A.N. 2712, 2741.

Our decision today has no effect on situations in which a State's "sheer inactivity" could actually frustrate the federal permitting process. Consider our decision in *Dominion Transmission, Inc. v. Summers*, 723 F.3d 238, 243 (D.C. Cir. 2013). There, we reviewed a petition brought under section 19(d)(2) for a state agency's alleged failure to act on a Clean Air Act permit. *Id.* at 242. Less than a month after receiving the request, the state agency informed the applicant "it would not be able to process the application." *Id.* There was no argument in *Dominion Transmission* that the state agency's inaction operated as a waiver under the Clean Air Act, as the Act's 18-month deadline for agency action had yet to run. *See* 42 U.S.C. § 7661b(c). We held that the agency had failed to justify its refusal to act on the application, and, pursuant to section 19(d)(3), we remanded to the agency with instructions to complete the permitting process within a reasonable timeframe. *Id.* at 245.

Likewise, a state agency's failure to comply with applicable FERC deadlines could trigger judicial review under section 19(d)(2). In its 2005 amendments to the Natural Gas Act, Congress authorized FERC to set a schedule for all federal permits. 119 Stat. at 689. Pursuant to that authority, FERC generally requires States to act within 90 days of the Commission's issuance of its own environmental report "unless a schedule is otherwise established by Federal law." 18 C.F.R. § 157.22. The Natural Gas Act requires state agencies to "comply with the deadlines established by the Commission," 15 U.S.C. § 717n(b)(2), and if a state agency exceeds FERC's deadline, the applicant could pursue remedies under section 19(d), *id.* § 717n(c)(2). Because FERC's schedules do not

11

include a waiver provision, we could remand to any delaying agency with instructions to act on the application. *See id.* § 717r(d)(3).

Along those lines, Millennium initially suggested in this case that the Department, in addition to exceeding the Clean Water Act's statutory deadline, also failed to comply with FERC's schedule (which required state agencies to act by August 7, 2016). Millennium did not reiterate that argument in its reply brief, however. And at oral argument, Millennium indicated that the Department's failure to meet FERC's deadline, rather than presenting a freestanding basis for relief, simply bore on whether the agency had acted within a "reasonable time" under the Clean Water Act's waiver provision. Oral Arg. Tr. 13:12-16. To the extent Millennium's argument folds into its Clean Water Act claim in that fashion, Millennium lacks standing for the reasons discussed above. And even if Millennium sought to make a separate argument about FERC's schedule, it would lose on the merits. FERC's regulations specify that its deadlines under the Natural Gas Act apply "*unless a schedule is otherwise established by Federal law*." 18 C.F.R. § 157.22 (emphasis added). The Clean Water Act, a federal law, establishes just such a statutory schedule. In fact, FERC anticipated that agencies acting pursuant to the Clean Water Act would not be bound by its deadlines. *See* Regulations Implementing the Energy Policy Act of 2005, 71 Fed. Reg. 62,912, 62,915 n.18 (Oct. 27, 2006). The Clean Water Act thus provides the only applicable deadline for our purposes.

12

\* \* \* \* \*

For the foregoing reasons, the petition for review is dismissed.

*So ordered.*